IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Tevin Lamall Johnson,**     )<br>    Petitioner,    )<br>    )<br>v.    )<br>    )<br>**Director of the Virginia**    )<br>    **Department of Corrections,**    )<br>    Respondent.    ) | 1:21cv917 (LO/TCB) |

### MEMORANDUM OPINION

Tevin Lamall Johnson ("Petitioner" or "Johnson"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his July 16, 2018 convictions in the Circuit Court for the City of Newport News, Virginia for two counts of first-degree murder and two counts of use of a firearm in the commission of a felony. On November 23, 2021, the Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. Petitioner was notified of his right to file responsive materials to the motion to dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) [Dkt. Nos. 14, 15, 17], but he has not responded. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

### I. Background

Petitioner is detained pursuant to final orders of the Newport News Circuit Court entered on July 16, 2018. (Commonwealth v. Johnson, Case Nos. CR15-2141, CR15-2142, CR15-2143, CR15-2144). Petitioner was tried by a jury on April 2 through 5, 2018, and convicted of two counts of first-degree murder and two counts of use of a firearm in the commission of a felony.

In accordance with the jury's recommendation, the circuit court sentenced petitioner to life for each first-degree murder conviction, and three years in prison for the first use of a firearm conviction and five years in prison for the second use of a firearm conviction.

Prior to trial, petitioner's trial counsel filed a motion to dismiss on the ground that the Commonwealth had failed "to bring the defendant to trial within the statutory timeframe" in light of the continuance that the trial court granted on the Commonwealth's motion at a hearing on January 20, 2017. [Dkt. No. 16-2]. The circuit court heard and denied the motion to dismiss on June 9, 2017. [Dkt. No. 16-3].

After sentencing, the circuit court appointed a different attorney to represent him on appeal and his new counsel filed a petition for appeal in the Court of Appeals of Virginia. (Record No. 1206-18-1). Petitioner raised three issues on appeal: the trial court erred in not allowing trial counsel to elicit testimony from Detective Bill Gordon regarding the names of "suspects"; the trial judge's ruling on Gordon's testimony infringed upon petitioner's right to call for evidence in his favor; and the evidence was insufficient to sustain his convictions. (CAV R. at 55-59). A single judge reviewed and denied the petition for appeal on April 11, 2019, and a three-judge panel of the court reviewed and denied the petition for appeal on June 24, 2019. The court found no error in sustaining the hearsay objection to Gordon's testifying about the alleged suspects, and that the other two errors were barred by the contemporaneous objection rule, Va. Sup. Ct. R. 5A:18. (Id.). In considering whether the ends of justice exception to Rule 5A:18, the Court summarized the evidence as follows:

> At about 4:48 p.m. on March 19, 2015, Newport News police officers arrived at
> the scene of a reported shooting at Deer Run Apartments. The officers found
> [Jeremy] Taylor in the middle of the roadway. Bystanders indicated that Taylor
> had been shot and that there was another gunshot victim in a nearby vehicle.
> When police officers asked Taylor who had shot him, he said that it was "Tevin

2

Johnson."[1] Taylor also said that there was another individual who "hung out" with appellant, but Taylor did not know that person's name. Taylor was transported by ambulance to the hospital, where he was pronounced dead.

[Adrian] Holiday was found in the driver's seat of a white sports utility vehicle nearby. He had been shot to death. Holiday died from a perforating gunshot wound to the chest, probably fired from close range. He also had a nonfatal "loose contact" gunshot wound to the right hand. Taylor was shot three times in the abdomen and once in the right forearm. The gunshot wounds to the abdomen were fatal.

Two bags of marijuana were on top of the center console of the vehicle. A bag containing more marijuana was in the front passenger floorboard. There were two cartridge casings in the back seat of the car. Cartridge casings were found on top of the center console, beneath the driver's seat, on the driver's floorboard, and under the carpet behind the rear passenger seat. Five of the cartridge casings had been fired from the same gun. One of the casings had been fired from the same gun as three bullets recovered from Taylor's body during the autopsy.

A camouflage sweatshirt with suspected blood on it was on the back seat of the vehicle where Holiday was shot. DNA testing proved that appellant and Holiday could not be eliminated as contributors to genetic material on the sweatshirt.

Analysis of records from appellant's cell phone indicated that the phone was contacted by Taylor's phone at 4:33 p.m. on March 19, 2015. Appellant's phone placed a call to a person in New York at 4:47 p.m. that day. After 5:50 p.m. on March 19, 2015, there were no further calls until the phone was located in New York the following day. The police found and arrested appellant in New York City on June 4, 2015.

Demarco McMullen testified that he was with a person who had planned to get marijuana from Taylor on March 19, 2015, at Deer Run Apartments. From where McMullen and his friend were parked in their vehicle, McMullen could see Taylor inside Holiday's car. McMullen heard the sound of a gunshot. McMullen saw Taylor exit the vehicle and start running. Appellant then got out of the back seat of the vehicle and started shooting a gun in Taylor's direction. Appellant got into an awaiting vehicle and drove away. Anthony Smith, who McMullen knew as "Antman," was in the vicinity, but he did not fire a gun. McMullen admitted that he had prior felony convictions.

Testifying in his own behalf, appellant said that he contacted Taylor about purchasing six ounces of marijuana on March 19, 2015. Appellant said that he intended to divide and resell the drugs. At Deer Run Apartments, appellant met Taylor, who was in a car that Holiday was driving. According to appellant, he and Taylor exchanged marijuana for money. Appellant stated that he got out of the car, and Holiday and Taylor drove away. However, appellant later went to meet Taylor a second time in the same location because Taylor called and claimed that

---

[1] [Footnote No. 3 in original:] One of the officers confirmed with Taylor that he was identifying a person named "Tevin" beginning with a "T."

> appellant's payment was short. As appellant approached the car on foot, he claimed that Taylor turned toward the back seat. Appellant said he heard the sound of gunshots, saw a rear door open on the car, and saw "Antman" get out of the car. Appellant said he ran from the scene because he was scared. Appellant's brothers took him to New York.

(CAV R. at 56-58). The court found the ends of justice exception did not apply and affirmed petitioner's convictions. (Id. at 59).

On June 28, 2019, petitioner filed a petition for appeal in the Supreme Court of Virginia. (Record No. 190858), which raised the same assertions of error he had raised in the Court of Appeals, alleging the Court of Appeals had erred by not finding error. The court refused the petition for appeal on November 25, 2019.

On July 25, 2019, while his petition for direct appeal was pending in the Supreme Court of Virginia, appellate counsel filed a motion for a delayed appeal pursuant to Virginia Code § 19.2-321.1 in the Court of Appeals of Virginia. [Dkt. No. 16-6]. Petitioner's appellate counsel argued that he had denied petitioner his right to the effective assistance of counsel because as appellate counsel he had failed to have the transcript of the June 9, 2017 hearing on petitioner's speedy trial motion to dismiss transcribed and timely filed.[2] The Court of Appeals denied the motion for delayed appeal on May 11, 2020 because the motion did not qualify for relief under Virginia Code § 19.2-321.1(A). The denial was without prejudice to petitioner seeking a delayed appeal through a petition for a writ of habeas corpus. [Dkt. No. 16-8].

On November 14, 2020, petitioner, by counsel, filed a petition for a writ of habeas corpus in the Supreme Court of Virginia seeking a delayed appeal. (Record No. 201376) (VSCT H. at 12). Petitioner also filed a pro se supplemental brief in which he claimed that the trial court erred

---

[2] The motion to dismiss filed at trial alleged that the prosecution had failed "to bring the [petitioner] to trial within the statutory time frame," and relied upon Virginia Code § 19.2-243. The motion did not raise a federal claim.

4

in granting the Commonwealth's motion for a continuance and tolling his constitutional speedy trial rights. (Id. at 16).

In an Order dated July 23, 2021, the Supreme Court of Virginia dismissed the habeas corpus petition, finding that petitioner had failed to satisfy the prejudice prong under Strickland v. Washington, 466 U.S. 668, 687 (1984), because he "was not entirely denied an appeal he otherwise would have taken." (Ex. 10 at 2) (citing Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000)). The habeas court also found that under Virginia case law interpreting the Virginia Speedy Trial Act, Virginia Code § 19.2-243, that petitioner had failed to satisfy the prejudice prong because he had failed to show "that, had counsel obtained the necessary transcripts and raised the speedy trial claim, he would have prevailed on appeal." (Ex. 10 at 3). The habeas court referenced the January 20, 2017 transcript of the hearing on the Commonwealth's motion for a continuance and ruled that petitioner had failed to establish that the trial court's ruling did not fall within a recognized exception. (Ex. 10 at 2). The habeas court also found that petitioner's pro se claim that the trial court had erred in granting the Commonwealth's motion for a continuance and tolling the speedy trial period was barred pursuant to the rule in Slayton v. Parrigan, 205 S.E.2d 680, 682 (1974). (Ex. 10 at 4).

On August 12, 2021, petitioner, proceeding pro se, filed the present § 2254 habeas corpus petition, which raises two grounds for relief:

> Ground I: Ineffective Assistance of Counsel. "Counsel failed to order a transcript for a pre-trial hearing on a speedy trial motion" and "[w]ithout the transcript, petitioner could not raise the speedy trial issue in his petition for appeal because … the appeals court judges couldn't evaluate whether the circuit court judge erred in his ruling if they didn't know what happened at the hearing or the trial [court's] basis." [Dkt. No. 1 at 5].
>
> Ground II: Petitioner's convictions were obtained in violation of his "Sixth Amendment right to a speedy trial." The trial court erred by denying petitioner's motion to dismiss because, unlike Wallace v. Commonwealth, 65 Va. App. 80, 96, (2015), aff'd, 292 Va. 1 (2016) upon which the trial court relied, there was "no

5

medical emergency." One of the assistant prosecutors had left the Commonwealth Attorney's office over "1 ½ months before trial," and the Commonwealth's Attorney "failed to assign the case to another attorney." [Id. at 7].

## II. Exhaustion and Procedural Default

Before filing a federal habeas petition a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the Supreme Court of Virginia with the same factual and legal claims raised in his § 2254 petition. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002).

If the merits of a petitioner's federal habeas claim has not been presented to the Supreme Court of Virginia, his claim is nevertheless deemed exhausted if it would be found to be defaulted if the petitioner presented his claim in a subsequent state habeas petition. Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (claim is "technically" exhausted if "a state procedural rule would bar consideration of the claim [if it] was later presented to the state court") (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).[3] Thus, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and ... prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." Id. at 162.

Petitioner exhausted Ground I, which alleges ineffective assistance of counsel in presenting an alleged trial error on appeal, in state habeas. Ground II, which alleges trial court

---

[3] If Petitioner attempted to reassert the defaulted claims in a second state habeas petition, the claims would be found to be either successive and barred by Virginia Code § 8.01-654(B)(2), untimely under the state habeas statute of limitations under § 8.01-654(A)(2), or barred under both statutes.

6

violated petitioner's "Sixth Amendment" right to a speedy trial by granting the prosecutor's motion for a continuance, was also raised in the state habeas proceedings, and found to be barred by the rule of Slayton v. Parrigan.

A finding of default under the rule of Slayton v. Parrigan is an independent and adequate state law ground that precludes federal review absent a showing of cause and prejudice for the default. Prieto v. Zook, 791 F.3d 465, 468 (4th Cir. 2015) (citing Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997).); Reid v. True, 349 F.33d 788, 805 (4th Cir. 2003) (citing Wright v. Angelone, 141 F.3d 151, 159-60 (4th Cir. 1998)). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). In order to show "prejudice," a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995). A review of the record establishes that Ground II has no merit.

*A. State Habeas*

In state habeas, the Supreme Court of Virginia found that the underlying speedy trial claim in the ineffective assistance of counsel claim (Ground I) had no merit. (VSCT H. at 165-67). The pre-trial motion had raised a violation of the state speedy trial statute, Virginia Code § 19.2 -243, and the habeas court, applying Virginia case law, found the speedy trial statute was properly tolled and the petitioner could not show prejudice.

Ground II alleges petitioner was denied his Sixth Amendment right to a speedy trial because the circuit court erred in granting the motion for a continuance and in denying his motion to dismiss. The motion to dismiss filed in state court, however, did not seek dismissal on constitutional grounds. The motion to dismiss alleged that the prosecution had failed to comply with the state speedy trial statute. In any event, assuming petitioner had raised a constitutional claim in state court, his claim has no merit.

The Sixth Amendment right to a speedy trial is "'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." See Barker v. Wingo, 407 U.S. 514, 515 (1972). Barker identified four factors that should be balanced in determining whether a defendant has been denied his Sixth Amendment right to a speedy trial (the right to a speedy trial: "(1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." United States v. Grimmond, 137 F.3d 823, 827 (4th Cir. 1998) (citing Barker, 407 U.S. at 530). "In order to prevail on his claim, [petitioner] must establish that on balance the four separate factors weigh in his favor." 137 F.3d at 827 (internal quotations omitted).

"The length of the delay for speedy trial purposes is measured from the earlier of the date of indictment or the date of arrest." Cain v. Smith, 686 F.2d 374, 381 (6th Cir. 1982) (citations omitted). Here the warrants in the criminal file indicate petitioner was arrested on June 17, 2015 and the trial orders indicate that his second trial, which resulted in his convictions, commenced on April 2, 2018 and the sentence was imposed on July 16, 2018. The total time from arrest to conviction is approximately three years and one month. Consequently, the Court will review the factors set out in Barker to determine if there was violation of petitioner's right to a speedy trial. United States v. Woolfolk, 399 F.3d 590, 597 (4th Cir. 2005) ("One year is the 'point at which

courts deem the delay unreasonable enough to trigger the Barker [i]nquiry." (citing Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992)).

> "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." [Barker, 407 U.S. at 530].The passage of a fixed period of time does not create a presumption of prejudice. Whether the delay is presumptively prejudicial is principally determined by the nature and complexity of the crime. See United States v. Baumgarten, 517 F.2d 1020, 1024 (8th Cir.) cert. denied, 423 U.S. 878 (1975). In Barker, the Supreme Court held that the "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Barker, 407 U.S. at 531.

Cain, 686 F.2d at 381; see also Barker, 407 U.S. at 521, 531 (stating that there is "no fixed point" at which a delay becomes too long and that the reasons for the delay are "[c]losely related" to its length).[4] To prevail on a speedy trial claim, the defendant must establish that "on balance, [the] four separate factors weigh in his favor." United States v. Hall, 551 F.3d 257, 271 (4th Cir. 2009) (citation omitted).

*1. Length of Delay, Reasons for Delay, and Assertion of the Right to a Speedy Trial*

In this case, both the prosecutor and trial counsel agreed that this was a complex case, and defense counsel's reason for most of his continuance requests[5] prior to January 20, 2017 had been necessary in order to provide him with sufficient time to read through the open file discovery, review body camera video, review several binders of information, review the several DNA certificates of analysis, other certificates of analysis, and other information.

---

[4] See, e.g., Barker, 407 U.S. at 533-34 (five year delay between arrest and trial and ten month pre-trial incarceration did not violate defendant's Sixth Amendment right to speedy trial absent serious prejudice); United States v. Thomas, 55 F.3d 144, 148-51 (4th Cir. 1995) (delay of over two years between arrest and indictment did not violate defendant's constitutional right to speedy trial absent showing of specific prejudice).

[5] Four of the continuance orders entered by the circuit court (June 13, 2016; July 11, 2016; August 8, 2016; and September 19, 2016) specifically reference the continuance was based upon trial counsel's need to review material and prepare for trial. Defense counsel admitted at the January 20, 2017 hearing that it had taken him approximately six months to review everything and be prepared for trial. (1/20/17 Tr. at 3-4, 9-10, 16).

9

Of the 37 months between arrest and sentencing, the time period from December 2015 through January 2016, were months when defense counsel was preparing for trial. From the arrest to indictment was approximately six months.[6] Thereafter, the original defense counsel was in preparation for trial, but the original defense counsel had to withdraw and new counsel was appointed. New counsel required several continuances and agreed to the January 30, 2017 trial date. The approximately fourteen months that elapsed are not months that can be attributed to the prosecution. The continuances were needed for the review of extensive discovery materials by original defense counsel and then for review by new defense counsel when the original attorney had to withdraw. In addition, the record is devoid of any claim of actual prejudice to petitioner from the delay, and petitioner did not raise the issue of speedy trial until approximately eighteen months after his arrest when he objected to the January 20, 2017 motion for a continuance. Until that point, the delay that had occurred was almost exclusively necessary for the petitioner's counsel to prepare for trial.

The petitioner's argument regarding the January 20, 2017 motion for a continuance also ignores several facts, as well as the trial record. There were originally two prosecutors assigned to handle petitioner's case, which is not surprising for what both sides admitted at the January 20, 2017 hearing was a complex case with a large amount of discovery to review. United States v. Hills, 618 F.3d 619, 628 (7th Cir. 2010) (the complexity of a case and the need for adequate trial preparation are valid reasons for excluding time for purposes of calculating limits of federal

---

[6] During this six-month period, the petitioner was extradited from New York, and had a preliminary hearing on November 2, 2015 in general district court. See https://www.vacourts.gov/main.htm (select Case Status and information, select General District, select Newport News-Criminal District Court, search "Johnson, Tevin") (last searched May 11, 2022). See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (collecting cases); see, e.g., Lynch v. Leis, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online). The indictments were returned by the grand jury on December 14, 2015.

Speedy Trial Act). One prosecutor left the Commonwealth Attorney's office on December 7, 2016, and the remaining prosecutor, who had considerable experience, had decided that she would handle the January 30, 2017 trial on her own. The experienced prosecutor had hip surgery in mid-December and expected to be back at work in time to prepare for the trial. Her recovery from the surgery had not proceeded as anticipated, however, and she notified her office on January 13, 2017 of her situation. The prosecutor's office responded by seeking a continuance due to medical condition of the prosecutor and the complexity of the case.

The Second Circuit addressed a similar factual scenario in its review of a district court's application of the federal Speedy Trial Act. United States v. DiTommaso, 817 F.2d 201 (2d Cir. 1987). In DiTommaso, the district court tolled the speedy trial clock because of the complexity of the case and suspended the speedy trial clock for seven weeks because of "the ill health of the chief prosecutor." Id. at 210. The Second Circuit found "no abuse of discretion in the trial judge's tolling of the clock to enable *new assistant prosecutors to prepare for trial.*" Id. (emphasis added). The Fourth Circuit has likewise observed that a prosecutor's "[u]navoidable health concerns are a valid reason for granting a reasonable delay" and tolling the speedy trial clock. See United States v. Eccleston, 615 F. App'x 767, 777 (4th Cir. 2015) (citing United States v. Trotman, 406 F. App'x 799, 805 (4th Cir. 2011); United States v. Hale, 685 F.3d 522, 535 (6th Cir. 2012); DiTommaso, 817 F.2d at 210).

After the trial was set for April, 2017, the trial was continued to June 2017 (just over two months) due to the unavailability of a material witness,[7] which Barker noted would justify a reasonable delay. 407 U.S. at 531 ("a valid reason, such as a missing witness, should serve to

---

[7] See, e.g., United States v. Twitty, 107 F.3d 1482, 1489 (11th Cir. 1997) (upholding ends-of-justice continuance where an essential witness was in "ill health"); United States v. Meyer, 803 F.2d 246, 247-48 (6th Cir. 1986) (upholding ends-of-justice continuance where an essential government witness had expensive, non-refundable honeymoon plans).

11

justify appropriate delay"). Following the mistrial in June 2017, the case was set by agreement for December 2017, but was continued until April 2018 (approximately four months) due to witness unavailability (a prosecutor also had a family medical emergency that required the prosecutor to travel out-of-state). The sentencing was set for June 2018 and continued twice on petitioner's motion, and sentencing eventually occurred on July 16, 2018. Throughout the 37 months, the delays attributable to the government were reasonable in nature (*i.e.*, witness unavailable, unanticipated health issues for a prosecutor) and there is no evidence or allegation of bad faith or an attempt to obtain an impermissible advantage.

2. *Prejudice*

While prejudice is not "essential" to the establishment of a speedy trial violation of the right, it "is a prime issue and a 'critical factor.'" Ricon v. Garrison, 517 F.2d 628, 634 (4th Cir. 1975) (citing United States v. Geller, 481 F.2d 275, 276 (9th Cir. 1973); United States v. Reynolds, 489 F.2d 4, 7 (6th Cir. 1973)). "The burden of establishing prejudice rests on the petitioner." Id.

> Prejudice should be assessed in relation to the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. In general, the defendant must demonstrate actual prejudice or "the credible possibility of prejudice." Ricon, 517 F.2d at 634 (cleaned up).

United States v. Lozano, 962 F.3d 773, 781 (4th Cir. 2020). Petitioner did not allege any of the three points set forth by Barker in his motion in the circuit court, in his state habeas petition in the Supreme Court of Virginia, or in his petition in this Court. His argument in support of his claim that his speedy trial right was violated is predicated upon a single point — the circuit court erred in granting the prosecutor's January 20, 2017 motion to continue the January 30, 2017 trial because a new prosecutor should have been assigned in December 2016 when the first prosecutor

12

left and the second prosecutor knew she was going to have surgery. See <u>United States v. Lloyd</u>, 645 F. App'x 273, 280 (4th Cir. 2016) (speculative prejudice is insufficient to support a claim that a defendant's Sixth Amendment right to a speedy trial was violated) (citing <u>United States v. Loud Hawk</u>, 474 U.S. 302, 315, (1986) ("Th[e] <u>possibility</u> of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated." (emphasis supplied)); <u>United States v. Frith</u>, 1999 U.S. App. LEXIS 13210, *11 LEXIS 13210, at *11 (4th Cir. June 14, 1999) ("When delay is justified by a legitimate governmental purpose, such as the need to obtain a missing witness, a speedy trial claim will fail absent a demonstration of actual prejudice.") (citing <u>Doggett</u>, 505 U.S. at 656). In essence, petitioner has alleged an error, but he has attached no prejudice to the error itself. His failure to allege prejudice weighs against his assertion that the granting of a continuance violated his right to a speedy trial.[8]

On balance, the four <u>Barker</u> factors do not weigh in petitioner's favor. The 37 months was not uncommonly long for a complex case, the delays attributable to the government (unavailable witnesses and prosecutor health issues) were reasonable and not asserted for impermissible purposes, and the petitioner does not allege he suffered any prejudice from the delays. In sum, the alleged constitutional speedy trial violation, even it had been raised, has no merit and could not constitute either cause or satisfy the requisite prejudice necessary to allow review of a defaulted claim.

### III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), "a federal court may

---

[8] The fact that the January 20, 2017 continuance benefited the government is not relevant to the prejudice analysis. <u>United States v. Gearhart</u>, 576 F.3d 459, 463 (7th Cir. 2009) (citations omitted) (the fact that the "government was able to strengthen its case against [the defendant] during the delay between indictment and trial ... is not relevant to the prejudice analysis"). Prejudice is not caused by a delay that allows the government to "hone its trial strategies and perfect its evidence" or otherwise "allowing the Government properly to strengthen its case, but rather by delays intended to hamper defendant's ability to present his defense." <u>United States v. Salerno</u>, 108 F.3d 730, 738 (7thCir. 1997) (<u>United States v. Tedesco</u>, 726 F.2d 1216, 1221 (7th Cir. 1984)).

not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair[-]minded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner

14

rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland. Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687.

A "doubly deferential judicial review" applies to "a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles, 556 U.S. at 123; see also Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Valentino, 972 F.3d at 581 (quoting Harrington, 562 U.S. at 102-03) (additional citation omitted).

Strickland's first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

15

would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fair[-]minded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (citation omitted).

### IV. Analysis

In Ground One, petitioner alleges his appellate counsel was ineffective for failing to obtain a transcript of the pre-trial hearing on the motion to dismiss for an alleged violation of Virginia Code § 19.2-243. Petitioner further alleges that because of appellate counsel's failure to raise this claim on direct appeal, the appellate court could not consider the issue on appeal.

The Supreme Court of Virginia found petitioner's claims had no merit because he had failed to establish prejudice under Strickland.

> [P]etitioner ... contends he was denied the effective assistance of counsel on appeal when counsel failed to obtain a necessary transcript and determined he could not, therefore, argue on appeal that petitioner had been denied the right to a speedy trial. Had counsel properly obtained the transcript, he would have argued the trial court erred by granting the Commonwealth a continuance on January 20, 2017, due to the unavailability of the prosecutor assigned to the case, and in tolling the speedy trial period for that continuance. Petitioner contends that, as a result of counsel's error, he is entitled to a belated appeal in which to raise his speedy trial claim.
>
> The Court holds this claim fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the petitions for appeal and the orders of the Court of Appeals and this Court disposing of petitioner's appeal, demonstrates that petitioner appealed to the Court of Appeals and to this Court, arguing the trial court erred in refusing to allow him to elicit testimony from a detective about the names of other suspects provided to police during the investigation of the murders. Petitioner also argued the evidence was insufficient to support his convictions. The Court of Appeals rejected on the merits petitioner's claim that the trial court improperly

limited his examination of the detective, but found his challenge to the sufficiency of the evidence was not preserved and that the ends of justice exception did not apply. This Court refused petitioner's subsequent appeal challenging those rulings. Thus, petitioner was not entirely denied an appeal he otherwise would have taken. See Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000).[9]

Petitioner has also failed to establish that, had counsel obtained the necessary transcripts and raised the speedy trial claim, he would have prevailed on appeal. The record, including the transcript of the January 20, 2017 hearing on the Commonwealth's motion to continue the case, demonstrates the case was initially assigned to two prosecutors, Assistant Commonwealth's Attorney Timothy Perry and Deputy Assistant Commonwealth's Attorney Almetia Hardman. The parties agreed the case was very complex, and petitioner's trial counsel had received numerous continuances to "get up to speed" due to the "sheer volume of materials." The case was eventually set to be tried on January 30, 2017. Perry left the Commonwealth's Attorney's Office on December 7, 2016. Hardman, who had 26 years of experience, planned and expected to handle the case alone. Hardman was scheduled to have hip replacement surgery in mid-December but, based on conversations with her doctor and others who were familiar with the surgery and the doctor, expected to return to work in early January.

On January 13, 2017, Hardman reported to the Commonwealth's Attorney she had not recovered as expected and that, as a result, her doctor had not cleared her to return to work. Hardman indicated she might never be able to return to work. Members of the office promptly assessed Hardman's docket, determined it would not be possible for another attorney to replace Hardman in time for the January 30, 2017 trial, and moved for a continuance.

The trial court granted the continuance over petitioner's objection and, given the expectation that Hardman would be back to work well within the time to try the case, her unexpected failure to heal properly, her presentation of that information to the Commonwealth's Attorney on January 13, and the admitted complexity of a case set to be tried within days, held that, pursuant to Wallace v. Commonwealth, 65 Va. App. 80, 96, 774 S.E.2d 482, 490 (2015), aff'd, 292 Va. 1, 798 S.E.2d 595 (2016), the time period for trying the case pursuant to Code § 19.2-243 was tolled.

In Wallace, the child of the prosecutor assigned to the case had a medical emergency that was reported to the trial court the day before the scheduled trial. The trial court granted the Commonwealth's motion to continue the case because of the unavailab[ility] of the prosecutor. On appeal, Court of Appeals held the delay necessitated by the trial court's finding that the prosecutor was unavailable for trial due to a legitimate medical emergency was delay of a "similar nature" to the exceptions enumerated in Code § 19.2-243.

---

[9] See Kitchen v. United States, 227 F.3d 1014, 1021-22 (7th Cir. 2000) (distinguishing cases where an attorney's alleged deficient performance did not "deprive" a defendant "of the appellate proceeding altogether," in which prejudice is presumed under Flores-Ortega, 528 U.S. at 483, with instances where an attorney has reviewed "the possible issues" for appeal and the attorney has abandoned or failed to raise an issue on appeal and a petitioner must "demonstrate[] prejudice" to prevail on a claim of ineffective assistance of counsel).

17

> In particular, the court in Wallace noted the speedy trial limits do not apply to any period of time where the failure to try the defendant was caused "[b]y the witnesses for the Commonwealth being enticed or kept away, or prevented from attending by sickness or accident." Id. at 90 (quoting Code § 19.2-248(2)). Recognizing this Court "has repeatedly held that the exceptions stated in the statute are not meant to be all-inclusive, and other exceptions of a similar nature are implied," provided they are "of a similar nature and have the same rationale as the enumerated exceptions," the court noted "the rationale behind the exceptions in Code § 19.2- 243 is to provide for speedy trial exceptions in circumstances beyond the control of the trial judge and the parties, when delays are warranted to ensure a fair trial to both the accused and the Commonwealth. Id. at 93–94 (citations omitted). The court held that,
>
>> [l]ike a witness, the prosecutor has special knowledge of the legal and factual issues inherent in the case and, like a witness, cannot simply be replaced at a moment's notice. A jury trial cannot go forward in the absence of any of the main participants, and a prepared prosecutor is undoubtedly one of those main participants. When, due to factors beyond his or her control, an assigned prosecutor is unable to be present for trial in a case such as this, a "delay[] [is] warranted to 'ensure a fair trial to both the accused and the Commonwealth." Id. at 94 (citations omitted).
>
> As in Wallace, the prosecutor assigned to petitioner's case was unable, due to factors beyond her control, to participate in the case. Her inability to return to work was unexpected and beyond her control, and it was concededly impossible for another attorney to take her place in such a complex case on such short notice. Accordingly, petitioner cannot demonstrate that, but for counsel's failure to raise this issue on appeal, there is a reasonable probability that the result of the proceeding would have been different.

(VSCT R. at 165-67).[10]

The Supreme Court of Virginia's findings were not based on an unreasonable determination of the facts, and its conclusions were not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Ground I will be dismissed.

---

[10] See, e.g., Bonds v. Beale, 145 F. Supp. 2d 708, 716 (E.D. Va. 2001) (applying AEDPA deference and dismissing a claim of ineffective assistance of appellate counsel that alleged counsel was ineffective for not asserting a violation of the Virginia speedy trial statute on direct appeal because the Supreme Court of Virginia held that the ineffective assistance of counsel claim because the claim had no merit and therefore the petitioner could not prove Strickland prejudiced).

18

## V. Conclusion

For the foregoing reasons, the motion to dismiss the petition [Dkt. No. 14] must be granted and the petition must be dismissed with prejudice. An appropriate Order shall issue.[11]

Entered this 1st day of September 2022.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.